UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| GENA DUCKWORTH, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) Case No. 4:03CV1696 RWS |
| | ) |
| ST. LOUIS METROPOLITAN | ) |
| POLICE DEPARTMENT, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before me on Defendants' Motion for Summary Judgment [#128]. Plaintiffs Gena Duckworth and Tamatha Fisher are female police officers for the St. Louis Metropolitan Police Department. Plaintiff Sandra Delaney is a former police officer for the Department. Plaintiffs bring this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., the Missouri Human Rights Act, Mo. Rev. Stat. §§ 213.010 - 213.095 ("MHRA"), and 42 U.S.C. § 1983. Plaintiffs claim that the Department impermissibly discriminated against them based on their gender when it transferred them from the day watch to the night watch[1] specifically because of their gender.

Defendants are the St. Louis Metropolitan Police Department (the "Department"), the Board of Police Commissioners of the City of St. Louis (the "Board"), Mayor Francis G. Slay, Chief of Police Joseph Mokwa, Major Roy Joachimstaler, Captain Antoinette Filla, and four individually named Board members. Defendants have moved for summary judgment on several grounds:

---

[1]The night watch begins at 11:00 p.m. and ends at 7:00 a.m.

- Defendants argue that they are entitled to summary judgment on Plaintiffs' Title VII claims against Mokwa, Joachimstaler, Filla, and the individual Board members on the basis that those claims cannot be brought against individual supervisors or coworkers.

- Defendants argue that they are entitled to summary judgment on Plaintiffs' Title VII claims against the Department and the Board on the basis that those claims are barred by Eleventh Amendment sovereign immunity.

- Defendants argue that they are entitled to summary judgment on Plaintiffs' § 1983 claims against the Department, the Board, and the individual Defendants in their official capacities on the basis that those claims can only be brought against persons.

- Defendants argue that they are entitled to summary judgment on Plaintiffs' § 1983 claims against the individual Board members on the basis that they are not liable under § 1983 in their individual capacities.

- Defendants argue that they are entitled to summary judgment on Plaintiffs' Title VII claims because Plaintiffs have not introduced sufficient evidence to show that a discriminatory attitude motivated their placement on the night watch and because placement on the night watch does not constitute an adverse employment action in the context of police work.

- Defendants argue that they are entitled to summary judgment on Plaintiffs' Equal Protection Clause claims on the basis that placing Plaintiffs on the night watch served an important governmental objective and was substantially related to the achievement of that objective.

- Defendants argue that they are entitled to summary judgment on Plaintiffs' Title VII retaliation claims on the basis that the Department did not take an adverse employment action against them.

- Defendants argue that they are entitled to summary judgment on Plaintiffs' failure to train or supervise claims brought under § 1983 on the basis that there is no supervisory liability under § 1983.

- Defendants argue that they are entitled to summary judgment on Plaintiffs' MHRA claims against the individual Defendants on the basis that those claims are barred by Missouri's doctrine of official immunity and the public duty rule.

- Finally, Defendants argue that they are entitled to summary judgment on Plaintiffs' § 1983 claims against the individual Defendants on the basis that those claims are barred by qualified immunity.

For the reasons stated below, the motion will be granted in part and denied in part.

**I.     BACKGROUND**

In February 2003, Plaintiffs were police officers assigned to the First District of the Department. Major Joachimstaler was the Commander of the South Patrol, which included the First District. Captain Filla was Commander of the First District, and Filla was Plaintiffs' immediate supervisor.

On February 6, 2003, Filla sent an email to all personnel of the First District which stated:

> I believe there is a definite need for female officers on the nightwatch, however, there seems to be a problem in this area. Therefore, the following schedule will begin on Monday, 2/10/03, with the rotation of female officers in the district. These officers will be re-assigned to the night watch for a complete 28 day period. At the end of the 28 days, they will return to their regular platoon until their turn comes up again.
>
> 2/10/03 -   Tamatha Fischer
> 3/10/03 -   Karen Eberhart
> 4/01/03 -   Michelle Vetter
> 4/29/03 -   Gena Duckworth
> 5/27/03 -   Monica Jeffries
> 6/24/03 -   Sandra Delaney
>
> \* \* \* \*

On February 10, 2003, Plaintiffs, along with officers Karen Eberhart and Monica Jeffries, filed a signed grievance with the Department which stated:

> [We] believe it is unfair to order us based upon our gender, to rotate monthly on the night watch. This order is in violation of Rules Manual designated in Section 3.114 where it is mandated that police officers be <u>permanently assigned to a platoon</u>. This order is also in violation of Title VII of the Civil Rights Act of 1964 wherein it is illegal to discriminate against employees in regards to sex, when the policy is applied in terms of condition of employment including placement.

Filla acknowledged receipt of the grievance on February 12, 2003. On February 14, 2006,

Filla prepared a memorandum in response to the grievances. In the memorandum, she explained her reasoning for her previous position that there should be at least one female officer on the night watch. Filla explained that there had been one female officer on the night watch previously, but she left the night watch to work as a detective. She stated that she had several conversations with Major Joachimstaler regarding the need for several female officers on the night watch, but they decided to rotate one female officer at a time through the night watch in order to avoid causing excessive burden to a single female employee. She stated that although she found no basis for Plaintiffs' grievance, she was rescinding her previous rotating assignments to the night watch. She stated in conclusion, "My resolution to this Grievance is to assign three (3) female officers to the nightwatch permanently, with one in each of the three precincts and separate recreation brackets." Plaintiffs were the three officers placed permanently on the night watch.

Filla acknowledged in the memorandum that the night watch is an assignment that "no one . . . desires." Filla also acknowledged in the memorandum that the night watch could be especially burdensome for female officers who had young children because they would need to retain a babysitter.

On February 25, 2003, Plaintiffs filed a second grievance stating that they believed that their permanent placement on the night watch was retaliation for their original grievance. Plaintiffs' grievance was rejected by Captain Filla on March 4, 2003, and it was finally rejected by Chief Mokwa, as recommended by the Grievance Committee, on May 12, 2003.

It is not clear from the record that Plaintiffs' complaints of gender discrimination and retaliation were ever addressed by the proper persons within the Department. On October 31, 2001, Chief Mokwa promulgated Special Order 2001 S-8, which revised the grievance

procedures for the Department. According to Special Order 2001 S-8, the grievance "procedure may not be used for issues involving . . . discrimination." The proper method for lodging a complaint of gender discrimination is stated in Special Order 2001 S-9, which was also promulgated by Chief Mokwa on October 31, 2001. Under Special Order 2001 S-9, gender discrimination[2] is to be reported to an employee's supervisor or to the Employee Relations/EEO Office. If the employee reports discrimination to his or her supervisor, the supervisor must then "promptly submit a confidential memorandum documenting the complaint and the corrective action taken to the Employee Relations/EEO Office." However, "if the supervisor is responsible for, or is closely connected to the discrimination or harassment, the employee shall be referred directly to the Employee Relations/EEO Office."

There is no evidence in the record that Plaintiffs' complaints of gender discrimination were referred to the Employee Relations/EEO Office in accordance with Special Order 2001 S-9. The Employee Relations/EEO Office has no record of Plaintiffs' grievances. As a result, it appears that the Employee Relations/EEO Office never addressed Plaintiffs' complaints of illegal gender discrimination.

In formulating its recommendation to Chief Mokwa, the Grievance Committee noted that complaints for civil rights violations were outside the scope of the grievance procedure. Accordingly, the Grievance Committee decided not to address the portions of Plaintiffs' grievances that alleged gender discrimination when it formulated its recommendation to Chief Mokwa.

---

[2]Under Special Order 2001 S-9, "[d]ifferent work assignments within a unit or division . . . with regard to an employee, based on the employee's . . . sex" are specifically recognized to be a form of discrimination prohibited by law.

The only issue in Plaintiffs' grievance that the Grievance Committee considered was whether Filla violated the Department's internal policy when she assigned them to the night watch on a temporary, rotating basis. The Grievance Committee concluded that the temporary, rotating assignment did violate the Department's policy, but that the violation was corrected when Filla assigned Plaintiffs to the night watch on a permanent basis.

On July 25, 2003, Plaintiff Fischer applied for the position of latent print examiner within the Department. It is undisputed that no other candidate applied for the position. Fischer claims that as part of the application process, Filla was required to sign the application and certify whether she believed Fischer was suited for the position, and that Filla refused to do so. Fischer did not receive the position. The Department reopened the position after Fischer's interview and hired a different candidate.

Plaintiffs filed a timely complaint with the EEOC, and a right to sue letter was issued on August 28, 2003. Plaintiffs filed this action on November 25, 2003.

## II.  STANDARD

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Lynn v. Deaconess Medical Center, 160 F.3d 484, 486 (8th Cir. 1998) (citing Fed. R. Civ. P. 56(c)). The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)

(quoting Fed. R. Civ. P. 56(c)).

When such a motion is made and supported by the movant, the nonmoving party may not rest on his pleadings but must produce sufficient evidence to support the existence of the essential elements of his case on which he bears the burden of proof. Id. at 324. In resisting a properly supported motion for summary judgment, the nonmoving party has an affirmative burden to designate specific facts creating a triable controversy. Crossley v. Georgia-Pacific Corp., 355 F.3d 1112, 1113 (8th Cir. 2004).

**III. ANALYSIS**

> ***A. Whether Defendants are Entitled to Summary Judgment on Plaintiffs' Title VII and MHRA Claims Against Mokwa, Joachimstaler, Filla, and the Individual Board Members Because Those Claims Cannot be Brought Against Individual Supervisors and Coworkers***

Defendants argue that Title VII actions cannot lie against individual supervisors in any capacity. Defendants are mistaken.

Individual supervisors, in their capacities as employees, may be liable under Title VII. Bales v. Wal-Mart, 143 F.3d 1103, 1111 (8th Cir. 1998). "'[S]upervisory employee[s] may be joined as a party defendant in a Title VII action, [but the] employee must be viewed as being sued in his capacity as the agent of the employer, *who is alone liable for a violation of Title VII*.'" Id. (emphasis in original) (quoting Gary v. Long, 59 F.3d 1391, 1399 (D.C. Cir. 1995)).

As a result, I will deny Defendants' motion for summary judgment on this ground. Plaintiffs' Title VII and MHRA claims will proceed against the individually named supervisors in

their capacities as agents of the Department.[3]

>    **B.    *Whether Defendants are Entitled to Summary Judgment on
>          Plaintiffs' MHRA Claims against the Department and the Board
>          on the Basis that Those Claims are Barred by Eleventh
>          Amendment Sovereign Immunity***

The United States Court of Appeals for the Eighth Circuit has recently reaffirmed its holding that the Board is not protected by Eleventh Amendment immunity. Thomas v. St. Louis Bd. of Police Com'rs, 447 F.3d 1082, 1087 (8th Cir. 2006). As a result, I will deny Defendants' motion for summary judgment on this ground.

>    **C.    *Whether Defendants are Entitled to Summary Judgment on
>          Plaintiffs' § 1983 Claims Against the Department, the Board,
>          and the Individual Defendants in Their Official Capacities on
>          the Basis that Those Claims Can Only be Brought Against
>          Persons***

Defendants claim that Plaintiffs' § 1983 claims against the Department and the Board must be dismissed because the Department and the Board are protected by Eleventh Amendment sovereign immunity. As I stated above, Defendants are mistaken. Thomas, 447 F.3d at 1087.

Defendants argue that § 1983 claims for gender discrimination against the Department and the Board must be dismissed because they are not "persons" for the purposes of § 1983. In support of this argument, Defendants cite to Quern v. Jordan, 440 U.S. 332 (1979), which involved a question of Eleventh Amendment sovereign immunity. In Quern, a state agency attacked an order from a federal court directing the agency to send an explanatory notice to a

---

[3]Plaintiffs admit that the MHRA does not allow suits to proceed against officials in their individual capacities, but Plaintiffs argue that their claims against Defendants in their individual capacities under the MHRA should survive summary judgment because "Missouri state and federal courts have anticipated that the Missouri Supreme Court will [someday] impose individual liability under the MHRA." The argument is without merit.

plaintiff class advising them of the available state administrative remedies to determine plaintiffs' welfare benefits. Id. at 334. The attack from the state agency was based on Eleventh Amendment sovereign immunity. The Court found that the order did not violate the state's sovereign immunity. Id. at 347-48. Because the Department and the Board are not entitled to sovereign immunity, Defendants have failed to show that they are entitled to judgment as a mater of law.

Defendants argue that Plaintiffs' § 1983 claims against the individual Board members, Chief Mokwa, Major Joachimstaler, and Captain Filla can only be brought against them in their individual capacities. Defendants' argument is based on the incorrect premise that the Board is a state agency and is entitled to Eleventh Amendment immunity. Because the Board is a local governmental agency, Plaintiffs may bring § 1983 claims against the individual Board members, Mokwa, Joachimstaler, and Filla in their individual capacities. Monell v. Dept. of Social Svcs. Of City of New York, 436 U.S. 658, 691 n. 55 (1978). As a result, I will deny Defendants' motion for summary judgment on this ground.

   D.   *Whether Defendants are Entitled to Summary Judgment on Plaintiffs' Title VII Claims Because Plaintiffs Have Not Introduced Sufficient Evidence to Show that a Discriminatory Attitude Motivated Their Placement on the Night Watch and Because Placement on the Night Watch Does Not Constitute an Adverse Employment Action in the Context of Police Work*

Defendants argue that summary judgment should be granted in their favor on Plaintiffs' Title VII discrimination claims because Plaintiffs have not shown that Filla or Joachimstaler were motivated by a discriminatory attitude against women, because Plaintiffs suffered no adverse employment action, and because Plaintiffs have not presented a prima facie case of discrimination

under the three-part McDonnell Douglas analysis. Defendants have applied the incorrect standard.

In this case, Plaintiffs have presented evidence of a *facially discriminatory* employment decision, which was implemented by Captain Filla and subsequently approved by Major Joachimstaler and Chief Mokwa. That is, Filla's sole reason for placing Plaintiffs on the night watch was their gender. Filla has testified that her motivation was beneficence, i.e., that she wanted to promote diversity on all of the shifts in the First District. Filla also testified that she believes it is important for female suspects to be searched by female officers and for female domestic violence victims to be interviewed by female officers.

Facially discriminatory employment decisions are allowable under Title VII if the employer shows that gender is a bona fide occupational qualification ("BFOQ"). 42 U.S.C. § 2000e–2(e); Int'l Union, United Auto., Aerospace and Agr. Implement Workers of America, UAW v. Johnson Controls, Inc., 499 U.S. 187, 199-200 (1991); Moteles v. Univ. of Pa., 730 F.2d 913, 920 (3rd Cir. 1984) (BFOQ defense applied to involuntary lateral transfer of female campus security officer to evening shift for the purpose of having a female officer available to female students when a sexual assault occurred or when otherwise needed). "The beneficence of an employer's purpose does not undermine the conclusion that an explicit gender-based policy is sex discrimination under [Title VII] and thus may be defended only as a BFOQ." Johnson Controls, 499 U.S. at 200. BFOQ is a defense, and Defendant bears the burden of proof. Id. The BFOQ defense is to be read narrowly. Id. at 201.

Gender discrimination based on a BFOQ is permitted only where "reasonably necessary to the normal operation of that particular business or enterprise . . ." 42 U.S.C. § 2000e–2(e). In

order to succeed on a BFOQ defense, the Department must show that there is a factual basis for believing that gender is a BFOQ reasonably necessary for the normal operation of the night watch. E.E.O.C. v. Mo. State Highway Patrol, 748 F.2d 447, 449 (8th Cir. 1984).

The Department has not analyzed Plaintiffs' transfer to the night watch under the BFOQ defense. The Department relies on Filla's testimony that she believes it is important for female police officers to search female suspects and interview female victims. Even if Filla's decision was motivated by beneficence, the Department must still defend its action as a BFOQ. Johnson Controls, 499 U.S. at 200. The Department has failed to introduce a sufficient factual basis to show that it is entitled to summary judgment on a defense that gender is a BFOQ reasonably necessary for the normal operation of the night watch.

Defendants' argument regarding Plaintiffs' Equal Protection Clause claims fails for the same reasons as their Title VII argument. As a result, I will deny the Department's motion for summary judgment on this ground.

### E. Whether Defendants are Entitled to Summary Judgment on Plaintiffs' Title VII Retaliation Claims on the Basis that the Department Did Not Take an Adverse Employment Action Against Them

Defendants argue that summary judgment should be granted in their favor on Plaintiffs' retaliation claims because placement on the night watch does not constitute an adverse employment action.

"To make out a prima facie case [of retaliation, each Plaintiff must] show that she engaged in activity protected by Title VII, that an adverse employment action occurred, and that a causal connection linked her protected activity and the adverse employment action." Krough v. Cessford

Const. Co., 336 F.3d 710, 712 (8th Cir. 2003).

Defendants do not contest the fact that Plaintiffs engaged in protected activity when they filed their grievances based on gender discrimination. Defendants' main contention is that Plaintiffs did not suffer an adverse employment action because a transfer to the night watch is a lateral transfer and does not constitute a materially adverse employment action.

The traditional analysis of what constitutes an adverse employment action under 42 U.S.C. § 2000e–3 was recently revisited by the United States Supreme Court. In Burlington Northern & Santa Fe Railway Co. v. White, the Court discussed the difference between the language in § 2000e–2 and § 2000e–3 and concluded that "the anti-retaliation provision, unlike the substantive provisions, is not limited to discriminatory actions that affect the terms and conditions of employment." 126 S. Ct. 2405, 2412-13 (2006).

In order to show that an adverse employment action occurred under 42 U.S.C. § 2000e–3, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Id. at 2415 (quotations omitted). In deciding whether an action would be adverse to a "reasonable employee," the fact finder must consider the specific context of the employment action. Id. For example, "[a] schedule change in an employee's work schedule may make little difference to many workers, but may matter enormously to a young mother with school age children." Id.

In this case, there is no question that Filla permanently assigned Plaintiffs to the night watch as a result of the grievance they filed on February 12, 2003. She stated so in her February 14, 2003, memorandum. In her memorandum, Filla also noted that the night watch is an

undesirable position and that it could be especially burdensome for women.

I find that there is a question of material fact as to whether a reasonable employee would view Filla's decision to place Plaintiffs on the night watch permanently to be a materially adverse action such that it "might dissuade[] a reasonable worker from making or supporting a charge of discrimination." As a result, Defendants are not entitled to summary judgment on this ground.

### F. Whether Defendants are Entitled to Summary Judgment on Plaintiffs' § 1983 Failure to Train or Supervise Claims on the Basis That There is No Supervisory Liability Under § 1983

Defendants argue that summary judgment should be granted in their favor on Plaintiffs' § 1983 claims against Chief Mokwa and the individual Board members because Plaintiffs have not shown that there was a pattern of unconstitutional acts and because the individual Board members were not made aware of Plaintiffs' placement on the night watch or their grievances.

"Section 1983 liability cannot attach to a supervisor merely because a subordinate violated someone's constitutional rights." Otey v. Marshall, 121 F.3d 1150, 1155 (8th Cir. 1997). Chief Mokwa and the individual Board members "can be liable for [Filla's] constitutional violation[s] only if [they] directly participated in the constitutional violation, or if [their] failure to train or supervise the offending actor caused the deprivation." Id. (quotations omitted). For Chief Mokwa or the individual Board members to have violated Plaintiffs' rights by failing to supervise Captain Filla, Plaintiffs must show that Chief Mokwa and the individual Board members:

(1) Received notice of a pattern of unconstitutional acts committed by subordinates;
(2) Demonstrated deliberate indifference to or tacit authorization of the offensive acts;
(3) Failed to take sufficient remedial action; and
(4) That such failure proximately caused injury to [Plaintiffs].

Id. (quoting Jane Doe A. v. Special Sch. Dist. Of St. Louis County, 901 F.2d 642, 645 (8th Cir. 1990)).

Plaintiffs have not presented any evidence that the individual Board members had any knowledge of or direct involvement in Filla's decision to assign Plaintiffs to the night watch because of their gender. As a result, Plaintiffs have not presented the evidence necessary to support a claim of failure to supervise against the individual Board members.

Plaintiffs argue that the Board abandoned its oversight duties and therefore failed to supervise the Department as required. However, Plaintiffs have not introduced any evidence that supports this argument. According to the Board's procedures, the Board is only informed of a complaint of discrimination if the complaint results in an investigation by the Internal Affairs department and Internal Affairs recommends that the discriminating officer be disciplined. There is no evidence that Internal Affairs recommended that Captain Filla be disciplined for the alleged discrimination in Plaintiffs' grievances. Plaintiffs have not argued that the Board members failed to follow the correct procedures. As a result, Plaintiffs have not presented any evidence to support their claim that the Board abandoned its supervisory responsibility. For these reasons, I will grant summary judgment in favor of the individual Board members on Plaintiffs' § 1983 claims.

I find that Plaintiffs have produced sufficient evidence for a reasonable jury to conclude that Chief Mokwa directly participated in the placement of Plaintiffs on the night watch. Chief Mokwa was the final arbiter in the grievance process that Plaintiffs participated in. Prior to the filing of Plaintiffs' grievances, Chief Mokwa promulgated Special Order 2001 S-9, which specifically stated that "[d]ifferent work assignments within a unit or division . . . with regard to an employee, based on the employee's . . . sex" are specifically recognized to be a form of

discrimination prohibited by law. Regardless of Special Order 2001 S-9, however, Mokwa found that Plaintiffs' grievances were groundless. Mokwa's decision to deny Plaintiffs' grievances resulted in Plaintiffs' continued placement on the night watch. As a result, I find that Chief Mokwa is not entitled to summary judgment on this ground.

### G. Whether Defendants are Entitled to Summary Judgment on Plaintiffs' MHRA Claims Against the Individual Defendants on the Basis that Those Claims are Barred by Official Immunity and the Public Duty Rule

Defendants argue that summary judgment should be granted in their favor on Plaintiffs' MHRA claims against the individual Defendants on the basis that those claims are barred by official immunity and the public duty rule. Defendants argue that the doctrine of official immunity shields public officials from civil liability for injuries arising out of their discretionary acts and that it was within Filla's discretion to assign Plaintiffs to the night watch. Defendants further argue that Plaintiffs' claims are barred by the public duty doctrine because "Captain Filla's decision dealt with the administration of the First District and how the Department operates for the benefit of the public in the geographic area she commanded." Defendants' arguments lack merit.

The doctrine of official immunity protects public officials from tort liability in certain circumstances. See Mo. Rev. Stat. § 537.600; Vaughn v. Logsdon, 2006 WL 1766556 *5 (W.D. Mo. 2006). This is not a tort case. As a result, Missouri's doctrine of official immunity does not apply to this case.

"The public duty doctrine 'holds that a public employee may not be held civilly liable for breach of a duty owed to the general public, as distinguished from a duty owed to particular individuals.'" State ex rel. Barthelette v. Sanders, 756 S.W.2d 536, 538 (Mo. banc 1988) (quoting

Green v. Denison, 738 S.W.2d 861, 866 (Mo. banc 1987)). This case does not involve a breach of duty owed to the general public. This case involves claims of civil rights violations against particular individuals. As a result, the public duty doctrine does not apply to this case.

> **H.** ***Whether Defendants are Entitled to Summary Judgment on Plaintiffs' § 1983 Claims Against the Individual Defendants on the Basis that Those Claims are Barred by Qualified Immunity***

Defendants argue that summary judgment should be granted in their favor on Plaintiffs' § 1983 claims against the individual Defendants on the basis that those claims are barred by qualified immunity. Defendants are mistaken.

"Government officials who perform discretionary functions are entitled to qualified immunity unless their alleged conduct violated clearly established federal constitutional or statutory rights of which a reasonable person in their positions would have known." Wright v. Rolette County, 417 F.3d 879, 884 (8th Cir. 2005).

Chief Mokwa, Major Joachimstaler, and Captain Filla are not entitled to the defense of qualified immunity because Plaintiffs' rights to be free from sex discrimination are clearly established and because Special Order 2001 S-9 is evidence that each of them were aware that a shift assignment based on an officer's gender is a violation of that right. As a result, the individual Defendants are not entitled to summary judgment on this ground.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment [#128] is

**GRANTED in part and DENIED in part**. Summary judgment is **GRANTED** in favor of the individual Board members on Plaintiffs' § 1983 claims. Summary judgment is **DENIED** on all other claims.

Dated this 25th Day of August, 2006.

                                                                          _____
                                                                          RODNEY W. SIPPEL
                                                                          UNITED STATES DISTRICT JUDGE